UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TROY LEE BRIDGES, | § | |
| TDCJ # 01945334, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-0136 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Troy Lee Bridges, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), filed a petition for a writ of habeas corpus seeking relief from a state court conviction (Dkt. 1), along with supportive briefing (Dkt. 2, Dkt. 4). Bridges proceeds *pro se*. Respondent Lorie Davis has filed a motion for summary judgment (Dkt. 12) and a copy of the state court records (Dkt. 13). Petitioner has filed a response (Dkt. 19), and the motion is ripe for decision. Having now considered the petition, briefing, all matters of record, and applicable legal authorities, the Court determines that summary judgment should be **granted** for Respondent and that all claims in the petition should be **denied**.

## I.   BACKGROUND

### A.   Procedural Background

Petitioner Troy Lee Bridges is serving a sentence for aggravated assault with a deadly weapon. Bridges was tried in the 344th Judicial District Court of Chambers County, Texas, Case No. 17438, Honorable Randy McDonald presiding. Attorney Gary

F. Dennison represented Bridges at trial. On August 13, 2014, the jury returned a verdict of guilty (Dkt. 13-14, at 36).[1] Bridges and the State agreed to a term of thirty-two years incarceration in TDCJ (Dkt. 13-15, at 2). The court entered judgment and sentence (*id.* at 10-11).

Bridges was represented on appeal by attorney James Keegan. On October 15, 2015, the Court of Appeals for the Fourteenth Court of Appeals affirmed the conviction, Case No. 14-14-00682-CR (Dkt. 13-3). Bridges filed a petition for discretionary review (Dkt. 13-16), which the Texas Court of Criminal Appeals refused on February 3, 2016, No. PD-1476-15 (Dkt. 13-17).

On December 7, 2016, Bridges executed a *pro se* state habeas writ, WR-86,398-01 (Dkt. 13-31, at 18-41). On February 6, 2017, the trial court entered Findings of Fact and Conclusions of Law recommending denial of relief (*id.* at 117-18). On March 29, 2017, the Texas Court of Criminal Appeals denied the writ without written order (Dkt. 13-30).

On April 13, 2017, Bridges executed his petition for a writ of habeas corpus (Dkt. 1) in this Court.

### B. Factual Background

Bridges was tried before a Chambers County jury and was convicted of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE § 22.02. On direct appeal, the Fourteenth Court of Appeals summarized the relevant facts as follows:

---

[1]    Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

> [Bridges] was indicted for aggravated assault. The indictment alleged that, on or about August 12, 2013, [Bridges] assaulted the complainant [Leann Ball] by placing a firearm to her head and threatening her. Following the jury's guilty verdict, [Bridges] changed his election from jury punishment to trial court punishment. The State and [Bridges] reached an agreement as to punishment. Pursuant to that agreement, the trial court found the [Bridges] had twice before been convicted of felony offenses and then assessed punishment at confinement for 32 years in the Institutional Division of the Texas Department of Criminal Justice. [Bridges] timely appealed.

(Dkt. 13-3, at 2). *See* Dkt. 13-15, at 2, 4-6 (stipulation to two enhancement paragraphs based on prior felony convictions and plea agreement for thirty-two years imprisonment).

Bridges raised three punishment phase issues on appeal: first, that the trial court should not have accepted the punishment agreement due to lack of notice that Bridges was being tried as a habitual offender; second, that Bridges did not voluntarily enter into the punishment agreement because he was erroneously advised regarding the range of punishment; and third, that Bridges received ineffective assistance of counsel with regard to his punishment agreement (Dkt. 13-3, at 2). The appellate court rejected the State's argument that Bridges had waived his right to appeal his sentence, but went on to deny relief on all three issues and affirmed the trial court's judgment. The Texas Court of Criminal Appeals denied Bridges' petition for discretionary review.

Bridges then filed a state habeas petition raising eight claims for relief, including ineffective assistance of trial and appellate counsel (Dkt. 13-31, at 18-41). Trial counsel did not file an affidavit responding to Bridges' claims. The trial court made findings that Bridges "received effective assistance of counsel," that he "fail[ed] to raise any new evidence," and that he "fail[e]d to state sufficient specific facts to support his grounds for

relief." (*id*. at 117). The court then entered one conclusion of law: "There are no material, previously unresolved issues of fact which are material to the legality of [Bridges'] conviction and sentence and there [is] ample evidence in the record for the Court to rule on the relief sought" (*id*. at 118). The Texas Court of Criminal Appeals denied the writ without written order (Dkt. 13-30).

Bridges' federal habeas petition brings eight claims that correspond to the claims in his state habeas petition, including ineffective assistance of trial and appellate counsel.

## II.   LEGAL STANDARDS

### A.   *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (internal quotation marks and citation omitted). "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

### B.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2)

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002);  *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under the AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 517 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA).  AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal citation and quotation marks omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (internal citation and quotation marks omitted).

On factual issues, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

### C. Summary Judgment Standard in Habeas Corpus Proceedings

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the

non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, AEDPA modifies summary judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are presumed to be correct—overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668.

## III.   ANALYSIS

Bridges brings federal habeas claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, constructive denial of counsel, and improper enhancement of his sentence.

### A.   Ineffective Assistance of Trial Counsel (Claims 1, 2, 4, 7a)

Petitioner claims that his trial counsel rendered ineffective assistance when he failed to raise a claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), during jury selection (Claim 1); when he failed to file a motion for new trial based on the *Batson* issue (Claim 2); when he failed to investigate, prepare a defense, present evidence, and subpoena witnesses (Claim 4); and when he failed to object to the trial court's response to the jury's request to review certain evidence during deliberations (Claim 7(a)).

### 1. Legal Standards

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .

> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694). *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This requires a "substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U.S. at 189 (internal citation and quotation marks omitted). The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . , but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995).[2]  The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case." *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (internal citations and quotation marks omitted).

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms. *Strickland*, 466 U.S. at 689.  A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  Any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades*, 852 F.3d at 432.

On habeas review, when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden.  The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's

---

[2]     *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9  (2004) ("The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different"); *Nix v. Whiteside,* 475 U.S. 157, 175 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland* "); *Strickland*, 466 U.S. at 693 ("[W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case").

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

The state habeas court determined that Bridges was not entitled to habeas relief on his *Strickland* claims because Bridges "received effective assistance of counsel" (Dkt. 13-31, at 117).

### 2.    Failure to Raise a *Batson* challenge (Claim 1)

Bridges claims that trial counsel rendered ineffective assistance when he failed to raise a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the State's peremptory strikes against two African-American persons on his venire panel. Under *Batson*, the courts engage in a three-step burden-shifting framework "for determining whether the prosecution has engaged in invidious racial discrimination during jury selection":

> First, the claimant must make a *prima facie* showing that the peremptory challenges have been exercised on the basis of race. The burden then shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried her burden of proving purposeful discrimination. . . . Throughout, the party making the claim of purposeful discrimination bears the ultimate burden of persuasion.

*Chamberlin v. Fisher*, 885 F.3d 832, 837-38 (5th Cir. 2018) (en banc) (internal citations, quotation marks, and alterations omitted).

Bridges, who is African-American, states that his venire panel of eighty-two people contained four African-Americans (Jurors 22, 39, 43, and 82) (Dkt. 19, at 8-19). Bridges maintains that the prosecution used peremptory challenges to strike Juror 22, who potentially could have been seated on the jury, and Juror 39, who potentially could have been seated as an alternate. Bridges further claims that the State's strike against Juror 39 was its eleventh peremptory challenge and that the State was only entitled to ten (*id*. at 9-10). He claims that because of these strikes, the jury that convicted him had no African-American jurors.[3]

As support for his claim, Bridges cites to the "strike lists" from the State and the defense, which he attaches as Exhibits A and G to his summary judgment response (*id*. at 54-56; *id*. at 65-67). However, apart from Petitioner's handwritten notations on his exhibits, the strike lists do not provide any indication of the race of any venire persons. Bridges does not cite to any portion of the voir dire transcript (Dkt. 13-25) that provides a record of the persons' race. Moreover, because no objection was made at trial, the record does not reveal any other facts relevant to a *Batson* claim, such as race-neutral reasons proffered by the prosecution. At this post-conviction stage, Petitioner's bare allegation that two African-American jurors were struck by the prosecution is insufficient. *See Murphy v. Dretke*, 416 F.3d 427, 436-37 (5th Cir. 2005).[4] Similarly,

---

[3] Bridges states that Jurors 43 and 82 were excused without use of peremptory challenges because the court excused all jurors with numbers 43 and higher.

[4] Petitioner also alleges that the number of African-Americans on his venire panel was disproportionate to the percentage of African-Americans in the Chambers County population. *See* Dkt. 19, at 11; Dkt. 19, at 70 (Exhibit J). Petitioner presents no evidence demonstrating the

although Bridges alleges that he was prejudiced by his counsel's failure to object, his statements are speculative and unsupported by citations to the record:

> [Trial counsel] should have made a *Batson* objection because the prosecutor would not have been able to provide a race neutral explanation as to why it improperly struck Juror # 39 after it has already used all 'ten" strikes . . . . Without a doubt the trial court would have sustained the *Batson* objection because the 14th Amendment protects and forbids anyone from racial discrimination during jury selection through the Equal Protection Clause.

(Dkt. 19, at 10). In the absence of any record support, Bridges' speculation that he was prejudiced is insufficient. *See Hebert v. Rogers*, 890 F.3d 213, 224 (5th Cir. 2018) (in case in which habeas petitioner brought a *Strickland* claim that trial counsel had failed to raise a *Batson* challenge to the prosecution's peremptory strikes, the court holds that, because petitioner had "not met her burden to prove that the State used its peremptory strikes with the intent to discriminate," she therefore had "failed to show that her attorney's representation was prejudicial when he did not object"). Bridges has failed to demonstrate a genuine issue of material fact as to a "reasonable probability" that, but for trial counsel's alleged deficiency, he would have been acquitted by the jury. *See Rhoades*, 852 F.3d at 432.[5]

Finally, Section 2254 requires this Court to defer to the determination by the state habeas court, which reviewed a record from Bridges' trial and state habeas proceedings that did not have a developed record regarding any *Batson* violation. Given the record

---

race of the members of his venire or the seated jurors and, in any event, has not brought a claim regarding the composition of his jury pool. *See Berghuis v. Smith,* 559 U.S. 314 (2010).

[5] Although Bridges also argues that prejudice should be presumed because he has shown structural error (Dkt. 19, at 17-18), the *Strickland* prejudice inquiry is properly applied to his claim. *See Hebert*, 890 F.3d at 224.

that was before the state habeas court, Bridges has not met his burden to show that the state habeas court's determination was an "unreasonable application" of *Strickland*, nor has he shown that the state habeas court made an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d).

### 3. Failure to File a Motion for New Trial (Claim 2)

Bridges claims that trial counsel was ineffective under *Strickland* failed when he to file a motion for new trial based on the prosecution's two peremptory strikes, which Petitioner alleges violated *Batson*. As stated above, the trial record contains no evidence of the venire persons' race or other evidence essential to a *Batson* claim. There is, therefore, no record evidence supporting Bridges' claim that counsel's performance was deficient or that a motion for a new trial would have resulted in a different verdict. *See Rhoades*, 852 F.3d at 432. Based on the record before the state habeas court, Bridges has not shown that the state habeas court's determination that he received effective assistance of counsel was an unreasonable application of *Strickland*, or an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).[6]

---

[6]     Petitioner also appears to cast this claim as a "constructive denial of counsel" claim (Dkt. 19, at 21). The Supreme Court set out the standards for a constructive denial of counsel claim in *United States v. Cronic*, 466 U.S. 648 (1984); *see Bell v. Cone*, 535 U.S. 685 (2002). In contrast to a *Strickland* claim, "*Cronic* applies in those cases in which defense counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Haynes v. Cain*, 298 F.3d 375, 377 (5th Cir. 2002) (en banc) (quoting *Bell*, 535 U.S. at 697). "[A]n attorney's failure must be complete," and "the difference between the situations addressed by *Strickland* and *Cronic* is not of degree but of kind." *Id.* (internal citations and quotation marks omitted). *See Black v. Davis*, No. 16-10159, 2018 WL 4214980, at *5 (5th Cir. Sept. 5, 2018); *Smith v. Quarterman*, 471 F.3d 565, 569 n.2 (5th Cir. 2006). As discussed below regarding Claim 4, the record does not support a finding that trial counsel "entirely fail[ed] to subject the prosecution's case to meaningful

### 4.      Failure to Investigate and Prepare for Trial (Claim 4)

Bridges claims that counsel rendered ineffective assistance when he failed to investigate the case, prepare a defense, present evidence, and subpoena witnesses. As held in *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014); *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Counsel's investigation decisions "depend[] critically" on "information supplied by the defendant." *Id.* The reasonableness of counsel's investigation decisions "can be assessed by taking into account the defendant's own statements, actions, and information supplied by the defendant; whether counsel has reason to believe that pursuing certain investigations would be fruitless or even harmful; resource constraints; and whether the information that might be discovered would be of only collateral significance." *Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (internal quotation marks, citations, and footnotes omitted). To establish prejudice for failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v.*

---

adversarial testing." *See Haynes*, 298 F.3d at 377. Petitioner's claim that counsel failed to file a motion for new trial is properly analyzed under *Strickland* standards.

*Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). *See Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

Bridges claims that trial counsel (a) failed adequately to investigate Leanne Ball (the complainant); (b) failed adequately to investigate Tina Phelps (a witness); (c) failed to subpoena the text messages between Ball and Bridges; (d) declined to call Jessica Jolly to the witness stand; and (e) failed to call other witnesses who were available to testify on his behalf. He claims that, if not for the "cumulative effect" of counsel's alleged errors, there is a "reasonable probability" that he would not have been convicted (Dkt. 19, at 40).

### a. Ball

Bridges alleges that trial counsel failed to adequately investigate and raise the alleged criminal history of complainant Leann Ball (*id*. at 34; *id*. at 68 (Exhibit H)). Although Bridges attaches a printout that purports to show a 2014 record regarding Ball from the sheriff of Upshur County, Texas, he has not demonstrated the presence of any evidence that would have been admissible and relevant as character evidence or impeachment evidence. *See* TEX. R. EVID. 404; TEX. R. EVID. 609. Moreover, he does not demonstrate any probability of a changed outcome based on any such evidence regarding Ball. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009) (noting that petitioner had failed to "demonstrate a reasonable probability" that information not located by trial counsel "would have altered the outcome at trial" and dismissing petitioner's claim of prejudice as "conclusory").

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### b.    Phelps

Bridges alleges that trial counsel was ineffective for his failure to investigate Phelps' account of the events and her alleged criminal history.

Bridges first claims that trial counsel was deficient because he failed to investigate purportedly contradictory statements by Phelps. He cites to a "supplemental narrative" from Chambers County Sheriff's Office dated August 13, 2013, which reflects Phelps statement that "she only heard the verbal confrontation and did not observe anything else because the front door was closed." *See* Dkt. 19, at 62 (Exhibit E). He asserts that, because the door was closed, Phelps "never saw a gun like she testified to seeing at trial" (Dkt. 19, at 34). However, contrary to Bridges' assertion, Phelps testified on cross-examination that she had *not* seen a gun. *See* Dkt. 13-26, at 56-57 (on cross-examination, counsel for Bridges elicited Phelps' testimony that she "didn't actually see [the pistol]"). *See also* Dkt. 13-27, at 12 (counsel for Bridges emphasized in closing arguments the lack of evidence regarding Bridges' possession of a gun). Bridges' assertions that counsel's performance was deficient on this issue are meritless and clearly contradicted by the record.

Bridges also alleges that counsel failed to adequate investigate his claim that Phelps had a criminal history (Dkt. 19, at 34; Dkt. 19, at 69 (Exhibit I)). As with Ball, Bridges makes no showing that Phelps actually had a criminal record that was potentially

admissible and relevant, and fails to demonstrate any prejudice.  *See* Tex. R. Evid. 404; Tex. R. Evid. 609; *Day*, 566 F.3d at 540-41.

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable.  *See* 28 U.S.C. § 2254(d).

### c.    Text messages

Bridges alleges repeatedly that trial counsel was deficient for failing to subpoena text messages between Bridges and Ball, as Bridges requested.  He maintains that the text messages "before and after the alleged incident would have shown there was no aggression between the two," and that "there were never any gun threats . . .  between the two" (Dkt. 19, at 36), thus undermining the case that he had committed aggravated assault with a deadly weapon.  He also maintains that the text messages would have demonstrated "beyond a reasonable doubt" that Ball "exaggerated" in her statement to police (*id*. at 33-34).[7]

Bridges does not provide any information about the contents of the text messages or how they might have supported his claims.  To establish prejudice for failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial."  *Miller*, 420 F.3d at

---

[7]      *See also id*. at 60-61 (in his complaint to the State Bar regarding trial counsel, Bridges claimed that the text messages would "show without a doubt 100% percent" that Ball was "lying" and would "get [Bridges] released immediately upon review of these text messages back and forth"); *id*. at 57 (informing trial counsel by letter of his belief that the text messages between him and Ball would "prove and show my innocence, <u>and</u> that she committed perjury as well") (emphasis original).

361. Bridges' conclusory allegations are insufficient to demonstrate either deficient performance or prejudice under *Strickland*. *See Murphy*, 416 F.3d at 436-37 (allegation of constitutional violation is insufficient for habeas relief); *Rhoades*, 852 F.3d 431-32 (habeas petitioner bears burden to demonstrate entitlement to relief under *Strickland*).

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### d. Jolly

Bridges argues that trial counsel was ineffective because he failed to call Jessica Jolly to the witness stand. Bridges presents two statements by Jolly. The first, dated October 22, 2014, after Bridges had been convicted, stated that Jolly had been prepared to testify that Ball "lied against [Bridges] and made it all up about the assault against her on August 12, 2013" but that she met with trial counsel during trial and, after counsel interviewed her, he declined to call her to the stand (Dkt 19, at 63). In her second statement, dated November 23, 2016, Jolly stated that she had told trial counsel that, after Bridges was arrested for the incident with Ball, Jolly asked Ball "why she lied on [Bridges] and said he had a gun and put it to her head," and that Ball responded, "'so what, I am still not dropping the charges against him'" (*id*. at 64). Bridges describes Jolly as his "most important witness" and alleges that counsel sent her home for "no apparent reason" (*id*. at 38-39).

The facts alleged by Bridges do not adequately demonstrate trial counsel's failure to investigate or call witnesses. The Jolly statements, on their face, state that trial counsel

considered Jolly's account, interviewed her, and decided not to call her as a witness. Trial counsel's decision is a classic strategic decision by counsel that is due a "strong degree of deference." *See Rhoades*, 852 F.3d at 432. Where, as here, counsel made a "conscious and informed decision on trial tactics and strategy," counsel's decision "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Miller*, 420 F.3d at 361 (internal citation and quotation marks omitted). Bridges has not made that showing.

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### e.    Other Witnesses

Finally, Bridges alleges that trial counsel was constitutionally ineffective because he failed to call additional witnesses including Rosenvelt Jolly, Patrick Thomas, and Thomas Moses. *See* Dkt. 19, at 34-35 (petitioner maintains that he provided counsel "numerous" times with a list of witnesses who "were willing to testify at trial that [Ball] was not telling the truth," but that counsel failed to investigate); *see id.* at 57-58 (letter to counsel dated Aug. 5, 2014); *id.* at 61 (letter to State Bar of Texas dated March 7, 2014). Petitioner makes various claims regarding the testimony that these witnesses might have given, including their testimony that Ball was not truthful and that they had never seen Bridges with a gun. He alleges that he was prejudiced because of the cumulative effect of the uncalled witnesses (*id.* at 36-37).

Because counsel's decision regarding "presentation of testimonial evidence is a matter of trial strategy," complaints regarding uncalled witnesses are "not favored." *Miller*, 420 F.3d at 362. The Fifth Circuit requires petitioners making claims that their counsel was ineffective for failure to call a witness "to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense." *Woodfox*, 609 F.3d at 808 (internal quotation marks, citation, and alterations omitted). Bridges has not presented statements from any of these witnesses attesting to the testimony they would have offered, their willingness to testify, or the favorability of that testimony to the defense.

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### 5. Failure to Object Regarding Jury Inquiry (Claim 7a)

Petitioner next claims that counsel rendered ineffective assistance when he failed to object to the court's decision not to let the jury review the victim and witness statements it requested. He argues that the trial court erred under Texas Criminal Procedure Code article 36.28. Article 36.28 governs a jury's request to have a witness' statement read to them:

> In the trial of a criminal case in a court of record, *if the jury disagree* as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or *the particular point in dispute, and no other*; but if there be no such reporter, or if his notes cannot be read to the jury, the court may

cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used on the trial.

TEX. CRIM. PROC. CODE § 36.28 (emphasis added). *See Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim. App. 1994).

In this case, the jurors sent a note to the court during deliberations requesting a copy of "the testimony to the officer from [Ball and Phelps]" and "a copy of all [three] testimon[ies] on the stand" (Dkt. 13-14, at 31). The judge responded in writing, "The court is not allowed to give you the record. If there is a dispute regarding the evidence, you must be specific as to the witness, whether on direct or cross examination (which lawyer is asking the question) and the substance of the dispute" (*id.*).[8] Bridges maintains that the statements requested by the jury were the only evidence from the State's two witnesses against him and that the court improperly usurped the jury's fact-finding role (Dkt. 19 at 49-51). He claims that his trial counsel was ineffective because he did not object to the judge's response to the jury's note.

Counsel's failure to object to the court's response was not ineffective under *Strickland* because any objection would have been futile. As evidenced by the note relied on by Bridges, the judge followed the dictates of Article 36.28, instructing the jurors that "if there is a dispute regarding the evidence," they were required to "be specific" about the "substance of the dispute" (Dkt. 13-14, at 31). *See Robison*, 888 S.W.2d at 480 ("Under Art. 36.28 the jury must disagree as to the statement of any witness before the

---

[8]     The record contains no indication that the jury made an additional inquiry after receiving the Court's response.

testimony may be read back . . . . A simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under Art. 36.28") (internal quotation marks and citations omitted). Counsel's decision not to make a meritless argument cannot serve as the basis for a claim of deficient performance. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006). Similarly, because any objection by trial counsel would have been futile, Bridges cannot show prejudice under *Strickland*.

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Appellate Counsel (Claims 3, 7b, 8)

A criminal defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Dorsey v. Stephens*, 720 F.3d 309, 319-21 (5th Cir. 2013). Claims of ineffective assistance of counsel on appeal are governed by *Strickland* standards, which require a petitioner to show that counsel's performance was deficient and that the petitioner was prejudiced. *Id.* at 319 (citing *Strickland*, 466 U.S. at 687). As with *Strickland* claims regarding trial counsel, the court's review is "highly deferential," and "doubly deferential" on habeas review. *Id.* Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Id.* at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

The state habeas court determined that Bridges was not entitled to habeas relief on his *Strickland* claims because Bridges "received effective assistance of counsel" (Dkt. 13-31, at 117).

### 1. Failure to Bring *Strickland* Claim Regarding *Batson* (Claim 3)

Bridges claims that his appellate counsel rendered ineffective assistance when he failed to raise a claim that trial counsel was ineffective for failure to challenge the State's peremptory strikes as contrary to *Batson*. He states that he discussed the issues with appellate counsel, including the strike he characterizes as the State's "illegal eleventh strike," before counsel prepared the appellate brief, but that counsel failed to raise the issues in his appeal (Dkt. 19, at 30-31).

Because appellate counsel filed a merits brief raising three issues, the Court must presume that he exercised reasonable professional judgment in selecting the issues for appeal. *See Smith*, 428 U.S. at 288. Bridges' statements in his briefing that he informed appellate counsel of the issue reinforces the conclusion that counsel considered, but decided not to raise, the claim. *See id.* (although it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent"). Moreover, although Bridges makes a conclusory allegation that his claim "would have succeeded on appeal" (Dkt. 19, at 30), this assertion is insufficient for the reasons stated above regarding Claim 1.[9]

---

[9] Bridges cites the Court to *Eagle v. Linahan*, 279 F.3d 926 (11th Cir. 2001), a federal habeas corpus proceeding that involved claims under *Strickland* and *Batson*. The *Eagle* decision is not directly on point because, unlike in Bridges' case, the *Batson* issue had been raised at trial.

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### 2. Failure to Bring *Strickland* Claim Regarding Jury Inquiry (Claim 7b)

Bridges claims that appellate counsel was ineffective because he did not bring a claim that trial counsel was ineffective for failure to object to the judge's response to the jury's note. As held above when discussing Bridges' claim of ineffective assistance of trial counsel, any objection by trial counsel would have been futile because the judge's instructions actually complied with Texas Code of Criminal Procedure Article 36.28. For the same reasons, any such claim on appeal would have been meritless. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994).

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### 3. Failure to Raise All Requested Arguments (Claim 8)

Bridges claims that appellate counsel was ineffective because he did not raise "non-frivolous arguments requested by the client," in particular, the claims raised in this federal habeas petition (Dkt. 19, at 52). Bridges states that he consulted with appellate counsel and requested that the issues be raised. As stated above, because counsel filed a merits brief with three issues, he is presumed to have exercised reasonable professional

---

Moreover, as held by the *Eagle* court, the trial judge had "misapplied" the law governing *Batson* claims. *Eagle v. Linahan*, 279 F.3d at 941.

judgment in selecting the issues for appeal. *See Smith*, 428 U.S. at 288. Bridges provides no additional evidence that would support a determination that appellate counsel was ineffective under *Strickland*.

On the record before the state habeas court, the court's determination that trial counsel was not constitutionally ineffective was not unreasonable. *See* 28 U.S.C. § 2254(d).

### C.     Constructive Denial of Counsel (Claim 5)

Bridges claims that he was constructively denied counsel when the trial court reappointed trial counsel to his case despite a conflict of interest. *See Bell*, 535 U.S. 685; *Cronic*, 466 U.S. 648. As stated above, "*Cronic* applies in those cases in which defense counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Haynes*, 298 F.3d at 377. *See Black*, 2018 WL 4214980, at *5; *Smith*, 471 F.3d at 569 n.2.

Bridges asserts that his trial counsel, Gary Dennison, withdrew from representation of Bridges on March 7, 2014, "due to conflicts of interest," after which Bridges' family retained counsel. He alleges that, after his family was unable to pay retain counsel and counsel withdrew, the trial court reappointed Dennison despite the conflict of interest (Dkt. 19, at 44).

The record reflects that, on May 14, 2014, the trial court held docket call at which Bridges was present (Dkt. 13-24, at 3). The court recounted Bridges' series of attorneys throughout the pretrial proceedings, noting that the initial appointed attorney had withdrawn; that Dennison than had been appointed; that Dennison subsequently was

removed when Bridges' family retained other counsel; and that retained counsel had then withdrawn due to non-payment (*id*. at 3-4).[10]  The judge informed Bridges that he was not entitled to request appointment of a specific attorney  (Dkt. 13-24, at 4).  When Bridges protested that his appointed attorneys "didn't call me" and that "[n]obody even showed up" (*id*. at 5), the court told him that, "once they are appointed, [the lawyers] make contact with you" (*id*. at 6).  The judge stated that he would reappoint Dennison "[b]ecause the only reason I took him off was because you hired someone else"  (*id*.). Bridges did not contest this statement by the court.

The Texas Court of Criminal Appeals has recognized the trial court's discretion regarding appointment and substitution of counsel:

> The trial court has discretion to determine whether counsel should be allowed to withdraw from a case.  However, the right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice.  Further, personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal.  A trial court has no duty to search for counsel agreeable to the defendant.

*King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (internal quotation marks and footnotes omitted).  In this case, the court placed on the record the reasons for re-appointing trial counsel, and noted that Bridges had been permitted to change counsel multiple times before trial.  Bridges was present at the proceeding and did not contest the court's reasons for reappointing Dennison.  Contrary to his current habeas claim, Bridges

---

[10]     *See also* Dkt. 13-21 (January 8, 2014, transcript regarding counsel's motion to withdraw); Dkt. 13-23 (April 22, 2014, transcript regarding counsel's motion to withdraw).

did not request that Dennison not be re-appointed because of a conflict of interest.[11]  The trial judge stated unequivocally that the "only reason" Dennison had previously been removed from Bridges' case was that Bridges "hired someone else" (Dkt. 13-24, at 6). Bridges cites to no evidence of an actual conflict of interest with Dennison.

Bridges has not shown that his trial counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," as required for a *Cronic* claim. *See Haynes*, 298 F.3d at 377.  On the record before the state habeas court, the court's denial of relief on this claim was not unreasonable.  *See* 28 U.S.C. § 2254(d).

### D.     Punishment Enhancements (Claim 6)

Bridges claims that he is entitled to federal habeas relief from his sentence because the sentence was enhanced by prior convictions that were more than ten years old, alleging that the use of older convictions violates the Eighth and Fourteenth Amendment (Dkt. 19, at 48).

After the jury found him guilty of second degree aggravated assault with a deadly weapon, *see* TEX. PENAL CODE § 22.02, Bridges entered into an agreement with the prosecution to serve a sentence of thirty-two years (Dkt. 13-15,at 1-2).   He stipulated to prior felony convictions from 1982 and 1991 (*id*. at 6).   The court then sentenced him as a habitual offender (*id*. at 10-11).  As held by the appellate court, Bridges "was properly

---

[11]      *See Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991) ("A criminal defendant is not entitled to appointed counsel of choice" and appellant had "never made any claim that there existed a conflict of interest which actually affected the adequacy of his representation provided" by appointed counsel); *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982) ("If a defendant is displeased with his appointed counsel, he must bring the matter to the court's attention").

subject to being punished as a habitual offender with a range of punishment of 25 to 99 years, or life" (Dkt. 13-3, at 7).  *See* TEX. PENAL CODE § 12.42(d).

Bridges cites no authority supporting his assertion that his sentence violated the Eighth and Fourteenth Amendments.  Because he has failed to demonstrate that the state court's determination was contrary to clearly established federal law, or an unreasonable application of the law to the facts of his case, habeas relief is denied.  *See* 28 U.S.C. § 2254(d).

## IV.    <u>CERTIFICATE OF APPEALABILITY</u>

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal citation and quotation marks

omitted).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  After careful review of the record and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.    **CONCLUSION**

For the reasons stated above the Court **ORDERS** that:

1.    Respondent's motion for summary judgment (Dkt. 12) is **GRANTED**.  The petition for a writ of habeas corpus (Dkt. 1) is **DISMISSED**.

2.    A certificate of appealability is **DENIED**.

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 25th day of September, 2018.

George C. Hanks Jr.
United States District Judge